RICHARD J. MONKS & another *vs.* DELIA S. MONKS & others.

A testator devised and bequeathed to trustees all his estate, real and personal, in trust, that they should " convert my personal estate into money, and to manage and take care of, according to their best ability and skill, my real estate; repairing, leasing, letting, and, if necessary, rebuilding, and receiving the income thereof, and to apply said income, together with the proceeds of my personal estate," after payment of expenses, to the payment of certain annuities; "and the remainder of the income of my said estate I direct my trustees to pay yearly, one third part thereof to my wife," with further provisions for the payment of the residue to his children; and after the death of his wife and all his children, to convey all his estate equally to his grandchildren. He also authorized the

trustees to sell certain of his real estate, and invest the proceeds, with the proceeds of the sales of his personal estate, in certain securities. *Held*, that the balance of money derived from the sale of the personal property, after the settlement of the final account of the executors, should be held by the trustees until the ultimate distribution of the whole estate among the grandchildren, as a fund from which in the mean time income should be derived for the benefit of the *cestuis que trust*.

A testator who in his lifetime had transferred bank shares to certain of his children as gifts, devised and bequeathed all his estate in trust, with directions that a certain portion of the income thereof should be equally divided among his children, and, in a codicil, after reciting the transfer of the bank shares, and his desire that his children should share equally, directed that the bank shares should be treated as advancements from his estate, and that the income thereof should be taken as a part of the distributive share of those children, in the income of his estate. *Held*, that the income of the bank shares should be taken to be the interest, at the rate of six per cent. per annum, upon the market value of the shares at the death of the testator.

BILL IN EQUITY in the nature of a bill of interpleader, brought by the trustees under the will of John P. Monks, seeking instructions as to the proper discharge of their duties.

The material parts of the will were as follows: .

" I nominate and appoint my son, Richard Joseph Monks, and my friend Osborn Howes, of said Boston, merchants, executors of and trustees under this my will. I give, devise and bequeath to my said trustees all my estate, real and personal, of every sort and kind, in trust that said trustees shall, as soon as convenient, convert my personal estate into money, and to manage and take care of, according to their best ability and skill, my real estate; repairing, leasing, letting, and, if necessary, rebuilding, and receiving the income thereof, and to apply said income, together with the proceeds of my personal estate, in the first place, to payment of expenses in management and repairs thereof; secondly, to pay from said income to my mother, Mrs. Margaret Monks, of said Boston, widow, eight hundred dollars per year during her life. . . . . . . I direct said trustees to pay from said income to my sister, Bridget Monks, of New York, single woman, three hundred dollars per year during her life ; and the remainder of the net income of my said estate I direct my trustees to pay yearly, one third part thereof to my wife, Delia S. Monks, during her life, and the other two thirds to all my children, equally to be divided, including said Richard J. Monks, to their sole and separate use during their lives ; and, if

my wife shall die before my children, then her third of said income shall go equally to said children in manner afore expressed; and, after the decease of my mother and sister, then their shares shall be divided, as aforementioned, amongst my children; and, in case of the decease of any child or children of mine, the share of such child shall go to his or her child or children, if any; otherwise shall be divided between my surviving children, as aforesaid, until the decease of all my children. I then order and direct that my trustee or trustees for the time being shall make over and convey all my estate equally to my grandchildren. And I authorize my trustees, if they think best, to sell and convey such of my lands as are at South Boston, or any part of such land at South Boston, and to invest the proceeds of the sales of such estate or lands, with the proceeds of the sales of my personal estate, in United States or state securities, or city of Boston scrip, or in first class mortgages of real estate."

The testator afterwards executed a codicil, the material parts of which were as follows:

" Before making my will, I had transferred to my son, Frank H. Monks, fifty shares of the capital stock of the Broadway Bank, Boston; also to my son, George H. Monks, thirty shares, and to my son, Henry G. Monks, seven shares, of said bank. Now it is my wish, as I have before expressed in my will, that all my children shall share equally in the division of the income of my estate. It is therefore my will that the above-mentioned bank shares transferred to my children be regarded and considered as so much advancement from my estate; and, in the division of the income of my estate, it is my will that the income of said bank shares so holden by said children shall be taken and considered as a part of the distributive shares of said children of the income of my estate; so that the division of the income of my estate, as stated in my will, will be made amongst all my children equally, in the same manner as it would if said bank shares were now in my name, and had never been transferred to my children."

It appeared that the testator left real estate to the appraised value of $275,700, and personal property to the amount, over

and above his debts, of about $15,000 ; he also left a widow and seven children. Since his death one grandchild has been born. The will was duly proved, and the plaintiffs accepted the trusts therein named. The minor children and grandchild of the testator appeared by their respective guardians *ad litem.*

*J. C. Dodge,* for the widow and children.

*C. W. Huntington,* for the grandchild.

MERRICK, J. The principal question arising upon the provisions in the will of the testator, concerning which the parties seek to obtain a determination of this court for the guidance and direction of the trustees in the performance of their duties, relates to the disposition which is to be made of the balance of personal property which shall remain in the hands of the executors upon the settlement of their final account. After first appointing R. J. Monks and O. Howes to be executors of and trustees under his will, the testator gives, devises and bequeaths to them all his estate, real and personal, of every sort and kind, in trust, and then adds, " that said trustees shall convert my personal estate into money, and to manage and take care of my real estate ; repairing, leasing, letting, and, if necessary, rebuilding, and receiving the income thereof, and to apply said income, together with the proceeds of my personal estate, in the first place, to payment of expenses in management and repairs thereof." This is inartificially and certainly not very plainly expressed ; but, considered in reference to the intention of the testator as manifested and disclosed in view of all parts of the will, the proper interpretation and meaning of these provisions cannot be mistaken.

That the balance of money derived from the sale and disposition of the personal property, which shall be in the hands of the executors after payment of debts and the expenses of administration and settlement of their final account, is to be received by the trustees, and by them to be held, controlled and managed until the ultimate distribution of the whole estate among the grandchildren of the testator, as a fund from which in the mean time income is to be derived for the benefit of the *cestuis que trust,* is manifest from the authority given to them to invest the

proceeds of the personal property with the proceeds of the sale of lands at South Boston, either in United States or state securities, or city of Boston scrip, or in first class mortgages of real estate. The express authority thus given to the trustees to mingle and blend the proceeds of the real and personal estate together in a common investment shows in the clearest manner that both are to be held for the same length of time, and managed and disposed of under one and the same trust. Hence it is an unavoidable implication that the phrase " together with the proceeds of my personal estate," as used by the testator in declaring the terms of the trust, in the language of the will above quoted, are to be construed as meaning the interest or income to be derived from the personal property duly invested. That this is the true interpretation of these words, in the connection in which they are there used, is apparent from another part of the will. After providing how the expenses to be incurred in the management and repairs of the estate and the annuities given to his mother and sister shall be paid, the testator adds : "And the remainder of the net income of my said estate I direct my trustees to pay yearly, one third part thereof to my wife during her life, and the other two thirds to all my children, equally to be divided." He had first given and devised to his trustees all his estate, " real and personal, of every sort and kind ; " and when he in the end provides for the disposition of all that shall remain of the net income of his " said estate," it is plain that he refers as well to the personal as to the real ; and the remainder of which he so disposes is what is left after payment of the expenses and annuities previously charged upon the income.

Upon the settlement, therefore, by the executors of their final account of administration, they are thenceforward to hold the balance of the personal property in their hands in their capacity as trustees ; and from the aggregate of the income derived from the whole estate, real and personal, they are to pay the expenses necessarily to be incurred in its care and management, including the compensation to be received by them for their services, and in the repairs made upon the real estate, which from time to time may be required. This is to continue until the death of

the last surviving child of the testator, at which time the trustees are to make over and convey all of his estate in equal shares to his grandchildren.

In the codicil the testator directs that the income from the shares of the capital stock of the Broadway Bank, which he had given as an advancement to his sons Frank, George and Henry, shall be taken and considered to be a part of their distributive shares in the division of the income of his estate under the provisions in his will. But these shares, having been given to his sons, became at once their property, and of course may be disposed of by them at their pleasure. The charter of the bank also may expire, and the stock will then no longer exist. It is necessary, therefore, to determine what shall be considered by the trustees to be the income of those bank shares, which is to be treated in the distribution of the income of the estate as a part of the share or portion of it which is to go to those sons. This must be, in view of the absolute equality in the enjoyment of and benefits to be derived from his estate, which the testator manifestly intended to secure to all his children, interest at the rate of six per cent. per annum on the market value of the bank shares at the time of his death. The amount of such interest must accordingly be added to the balance of income which remains after payment of expenses in the management and repairs of the estate, and the annuities given to the mother and sister of the testator; and the division of the income of the estate among the children is to be predicated upon the aggregate of both.

The costs of suit, including the necessary fees of counsel, are to be taxed and paid by the executors, and charged in their account as part of the expenses in the administration of the estate.

A decree in conformity to the conclusions above stated is accordingly to be made and entered of record.